UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JUANITA M. LUEVANO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　Respondent. | Case No. ED CV 16-0380-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Juanita M. Luevano ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as respondent under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an application for SSI on June 1, 2010. Administrative Record ("AR") 102-03, 107, 269-77. After her application was denied, she requested a hearing before an administrative law judge ("ALJ"). AR 137-39. A hearing was held on December 13, 2011, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). AR 33-62. In a written decision issued December 30, 2011, the ALJ denied Plaintiff's claim for benefits. AR 107-14. Plaintiff requested review of the ALJ's decision, AR 180-82, and on July 23, 2013, the Appeals Council vacated the decision and remanded the case for further proceedings, AR 119-21.

On April 25, 2014, a different ALJ held a hearing, at which Plaintiff, who was represented by counsel, testified. AR 63-77. The ALJ then continued the hearing to allow Plaintiff to submit additional records. Id. On June 23, 2014, the ALJ held an additional hearing, at which Plaintiff and a VE testified. AR 79-101.

In a written decision issued July 9, 2014, the ALJ denied Plaintiff's claim for benefits. AR 14-24. The ALJ found that Plaintiff's back condition was not a medically determinable impairment, a finding that Plaintiff does not challenge. AR 16. The ALJ further found that Plaintiff had the severe impairments of depression and anxiety, but she retained the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> she can do work on a sustained basis requiring only basic, simple mathematic skills such as simple adding, subtracting, multiplying, and dividing. Also on a sustained basis, she can understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers and usual work situations; and can deal

2

| | |
|---|---|
| 1 | with changes in routine work setting changes. |
| 2 | AR 16-18. Based on the VE's testimony, the ALJ found that Plaintiff could |
| 3 | perform jobs that existed in significant numbers in the national economy. AR |
| 4 | 23-24. He therefore concluded that Plaintiff was not disabled. AR 24. |
| 5 | Plaintiff requested review of the ALJ's decision. AR 10. On December |
| 6 | 14, 2015, the Appeals Council denied review. AR 6-9. This action followed. |

## II.

## DISCUSSION

Plaintiff argues that the ALJ erred in discounting her credibility. Joint Stipulation ("JS") at 3. For the reasons discussed below, the Court disagrees.

### A. Applicable Law

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the alleged pain or other symptoms alleged.'" Id. at 1036 (citation omitted). Once a claimant does so, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as

3

amended) (citation omitted). The ALJ may consider, among other factors, a claimant's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, her work record, and her daily activities. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen, 80 F.3d at 1283-84 & n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

## B. Relevant Facts

### 1. Plaintiff's Medical Records

In September and December 2009, a provider noted that Plaintiff's depression was "stable." AR 377-78. In October 2010, a provider noted that Plaintiff had been "stable on Prozac for some time" and "feels well."[2] AR 414. He refilled her medication. Id.

In December 2010, psychologist Aparna Dixit examined Plaintiff at the Social Security Administration's request. AR 401-05. Plaintiff reported that she suffered from "a lot of anxiety," did not like to be around people because of her depression, and suffered from spinal stenosis and could not lift heavy things. AR 401-02. Dr. Dixit observed that Plaintiff was alert and oriented, her speech was clear and coherent, her thought process was linear, her thought content was logical, and her insight and judgment was intact. AR 402. Plaintiff's affect was appropriate and congruent with her mood, which was "mildly depressed." Id. Throughout the examination, Plaintiff worked with a

---

[2] Prozac, or fluoxetine, is a selective serotonin reuptake inhibitor that is used to treat depression and panic attacks. Fluoxetine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a689006.html (last updated Nov. 15, 2014).

4

normal pace and demonstrated adequate persistence. Id.

Based on Plaintiff's clinical presentation, her reported history, and the results of psychological testing, Dr. Dixit diagnosed major depressive disorder and found that Plaintiff's psychiatric symptoms were partially controlled by medication. AR 404. Dr. Dixit opined that Plaintiff had no impairment in her ability to follow and remember simple instructions, maintain pace or persistence for one- or two-step simple repetitive tasks, and communicate effectively with others verbally and through writing. AR 404-05. Dr. Dixit opined that Plaintiff was mildly impaired in her ability to follow and remember complex or detailed instructions, maintain adequate pace and persistence for complex tasks, maintain adequate attention and concentration, adapt to changes in routine, withstand the stress of a normal workday, maintain emotional stability, and interact appropriately with coworkers, supervisors, and the public. Id. Dr. Dixit opined that Plaintiff had mild to moderate difficulty performing tasks requiring mathematics skills. AR 405.

Also in December 2010, Dr. Frank Chen examined Plaintiff at the Social Security Administration's request. AR 406-07. Dr. Chen noted that Plaintiff "stated that she does not have any specific physical complaints or medical conditions" but she reported a history of anxiety and depression. AR 406. A complete physical examination rendered only normal results. AR 407.

In January 2011, a provider noted that Plaintiff had depression and was "on Prozac." AR 413. In February 2011, a provider noted that Plaintiff had had a panic attack over the weekend and had been "more depressed on Sunday." AR 449. He increased her Prozac and prescribed Ativan for panic attacks.[3] Id. Later that month, Plaintiff's provider wrote a letter "[t]o whom it

---

[3] Ativan, or lorazepam, is a benzodiazepine that slows activity in the brain to allow for relaxation. See Lorazepam, MedlinePlus, https://

may concern," noting that he had been treating Plaintiff for depression and that she was taking Prozac daily and had been given Ativan to use "sparingly for panic attacks." AR 442.

In April 2011, Plaintiff's provider noted that Plaintiff reported increased panic attacks in the last week and he prescribed an additional medication, BuSpar.[4] AR 463. In May 2011, a provider noted that BuSpar "helps [Plaintiff] sleep" and that Plaintiff was "trying to get on disability." AR 462. In August 2011, a provider noted that Plaintiff was "doing better" with her anxiety and that her depression and anxiety were "stable on BuSpar/Prozac." AR 461.

No medical records were available from 2012. See AR 80 (Plaintiff's counsel stating during June 2014 hearing that no other records were available). In February 2013, Plaintiff saw a new provider. AR 482. Among other things, the provider noted that Plaintiff had "depression/ anxiety" and advised her to continue taking Prozac and BuSpar. AR 482.

In April 2013, a provider noted that Plaintiff had a history of depression and anxious mood, took Prozac and BuSpar, "and says she feels medication is working well." AR 480. The provider noted that Plaintiff's depression and anxiety were "stable." Id. In August 2013, Plaintiff visited the doctor to get a medical excusal from jury duty. AR 479, 481. At that time, Plaintiff stated that her symptoms had not been controlled by her BuSpar and Prozac and she reported having four to five panic or anxiety attacks a day. AR 481. In October 2013, Plaintiff's provider noted that Plaintiff had generalized anxiety disorder and depression but said she was "doing well" with "no complaints" and "no

---

medlineplus.gov/druginfo/meds/a682053.html (last updated Apr. 15, 2017).

[4] BuSpar, or buspirone, is used to treat anxiety disorders. See Buspirone, MedlinePlus, https://medlineplus.gov/druginfo/meds/a688005.html (last updated Apr. 15, 2011).

6

depressed mood at this time." AR 477. The provider noted that Plaintiff's depression and anxiety were "stable." Id.

### 2. Plaintiff's Subjective Complaints

In an undated disability report, Plaintiff alleged that she had been disabled since December 30, 1991,[5] because of "[g]eneral [a]nxiety [d]isorder," depression, "[e]motional problems," and "mental." AR 298. Plaintiff stated that she had received SSI before she married in 1999, but that her benefits were discontinued after her marriage because her husband had been working.[6] AR 304. She stated that her husband had retired in May 2009 and she was therefore asking that her SSI be reinstated. Id.

In an August 2010 function report, Plaintiff wrote that her daily activities included showering, getting dressed, combing her hair, and, if she was going out, putting on makeup. AR 322. She slept late because she did not sleep well at night, had lunch, sometimes ran errands or went shopping with her husband, watched television, made dinner with her husband's help, talked to her grown children on the phone, cleaned up, and got ready for bed. AR 322, 326. Some days Plaintiff also washed her hair. AR 322.

Plaintiff had trouble sleeping because she "worried about stuff all the time." AR 323. She had no problems with her personal care. Id. With her husband's help, Plaintiff prepared frozen dinners and ready-made food. AR 324. She was able to perform some household chores, including loading and unloading the dishwasher, making the bed, dusting, and "straighten[ing] up." Id. Her housework would sometimes take a "few hours." Id. Plaintiff did not

---

[5] In her application, Plaintiff stated that her disability began on February 1, 1993. AR 269.

[6] Plaintiff apparently received SSI from November 1994 to August 1999. See AR 294.

do any yard work because she "tired easily." AR 325.

Plaintiff went outside a few times a week and she was able to drive. Id. She could go out alone, but her husband was usually with her. Id. Plaintiff shopped in stores for personal items or clothing when necessary, which would take about an hour. Id. She was able to manage her own money. Id. Plaintiff watched television or movies a few times a week, talked to her grown children on the phone, and regularly went to stores and ran errands. AR 326. Plaintiff stated that she felt very anxious around family, friends, neighbors, and others. AR 327.

Plaintiff stated that her condition affected her ability to lift, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Id. Plaintiff said she "can't lift because [she has] back problems," and when she is "stressed or under pressure [she has] trouble concentrating and forget[s] things." Id. She wrote that it is "hard to understand directions and follow instructions" and that she gets "overwhelmed and can't finish what [she] starts." Id. She wrote that she "get[s] confused, can't think straight" and "become[s] emotional." Id. Plaintiff could walk "maybe one block" before needing a rest and could pay attention "maybe an hour or less." Id. She did not finish what she started and could not follow written or spoken instructions well because she got "confused every time." Id. Plaintiff could not handle stress or changes in routine well. AR 328. She wrote that she was a "very depressed person" and had "always been anxious and worried about everything." AR 329.

On December 10, 2010, Plaintiff reported to Dr. Dixit that she was able to take a bus by herself, drive a car, perform simple household chores, dress and groom herself, and prepare simple meals and grocery shop with some assistance. AR 402. Plaintiff said her medication was "partially helpful in reducing her symptoms." Id. Plaintiff reported to Dr. Chen that she could

cook, do housework, wash dishes, do laundry, buy groceries, watch television, use a computer, listen to music, read, walk, run errands, and go to the movies. AR 406.

Plaintiff's claim was denied initially on February 9, 2011, and upon reconsideration on May 3, 2011. AR 102-03, 107, 123-26, 130-34. In a March 3, 2011 "Disability Report - Appeal," Plaintiff wrote that her symptoms had "become increasingly worse in the last few months." AR 348. She stated that she had been experiencing severe panic attacks that left her feeling "drained and exhausted" and that she had to take a nap "right after having an attack." Id. Plaintiff stated that she was "so scared of these attacks that now [she had] to make [her] husband drive" and she would have attacks at night that woke her up. Id. Plaintiff's depression had "become worse due to [her] feelings of increased anxiety" and she "constantly [broke] down crying and [felt] emotional about everything." Id. Plaintiff wrote that her husband "now does everything for [her] around the house" including "shopping and taking care of [their] finances." Id. Plaintiff wrote that she could "no longer . . . think straight enough to do even the basic things" and that her "body has become weak from no activity." AR 348-49.

Plaintiff wrote that her condition had "really affected [her] ability to do many things that [she] used to do for [herself]." AR 352. She "now need[ed] help getting in and out of the shower" and washing her hair; "[s]ometimes when [she was] really weak or extremely tired" she needed help getting "to and from the bathroom." Id. Plaintiff said her husband now helped her get dressed, prepared all of her meals, and did all the housework and shopping. Id.

On June 5, 2011, Plaintiff completed another "Disability Report – Appeal." AR 358-64. She wrote that since her last report, she had started suffering from "additional panic attacks" and had "more trouble concentrating on things." AR 358. She wrote that she "tired easily so it's hard to do things

for [herself]" and her husband helped out "a lot." AR 361.

At the December 13, 2011 hearing, Plaintiff testified that she tired easily but her main problem was her "severe anxiety," which caused her to get "very nervous" and "stressed out." AR 39-40. She testified that she watched about 4 hours of television a day and used a computer to send email, look at shopping websites, and use Facebook. AR 44-46. Plaintiff drove about twice a week, ate at a restaurant about once a week, and attended church every few months. AR 46-48. Plaintiff testified that in the previous two years, she and her husband had taken a 9-day cruise to Mexico and a 3-day trip to Las Vegas. AR 49-53. She testified that while on the cruise, she had a "very bad time" and felt "anxious" and "very stressed out," and that on the drive home from Las Vegas, she had had panic attacks. AR 51-53.

Plaintiff testified that her anxiety was worse when she was "out in public" and there was nothing she could do to make it better. AR 55. Plaintiff said she took medication to help with her panic attacks but it did not work. AR 55-56. Her panic attacks lasted 5 or 10 minutes at a time and she never knew when they were coming. AR 56. Plaintiff testified that she had trouble sustaining concentration and remembering and she got confused easily. AR 56-57. The highest level of education she had completed was a two-year associate's degree in travel, AR 38, and she had not worked at a full-time job during the previous 15 years, AR 39.

At the April 25, 2014 hearing, Plaintiff testified that she had never been hospitalized for psychiatric complaints, but she once went to the emergency room because she did not have any medication or a doctor who would write her a prescription. AR 70-71. She was unable to work because she would get "very stressed out" and "very nervous," her mind would "go blank," and she would get "very upset." AR 73. Plaintiff stated that her medications helped "some" but she did not think they helped "the way they should." AR 74.

| | |
|---|---|
| 1 | At the June 23, 2014 hearing, Plaintiff testified that she could "do math, |
| 2 | but nothing . . . extensive" and she could not follow directions. AR 83-84. She |
| 3 | had panic attacks that each lasted about 5 minutes at least 10 times a week. AR |
| 4 | 86-87. She had to lie down after a panic attack at least 5 times a week. AR 88. |
| 5 | She had nightmares a few times a week and was able to sleep about 6 hours a |
| 6 | night. Id. Plaintiff testified that her medication did not help her. AR 91-92. Her |
| 7 | husband paid the bills and did the cooking. AR 90-91. Plaintiff would go to the |
| 8 | grocery store with her husband about once a week. AR 92. |

**C.  Discussion**

In the July 9, 2014 decision, the ALJ determined that Plaintiff's alleged psychological symptoms were "partially credible," AR 19, and he accommodated some of her subjective complaints by limiting her to performing "only basic, simple mathematic skills" and understanding, carrying out, and remembering only "simple instructions." AR 17-18. To the extent the ALJ partially discredited Plaintiff's testimony and allegations, see AR 19, he gave clear and convincing reasons for doing so.

The ALJ was entitled to rely on Plaintiff's infrequent treatment and positive response to medication in discounting her subjective complaints. See AR 19 (noting that Plaintiff "infrequently sought treatment and was merely prescribed psychotropic medications of Prozac, Buspirone, and occasional Ativan" and did not "generally receive[] the type of medical treatment one would expect from a completely disabled individual");Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citation omitted)); cf. Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th

11

Cir. 2006) (holding that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment" in rejecting claimant's credibility). Plaintiff complained of debilitating psychiatric symptoms, but her medical records show that she visited her primary-care providers for mental-health treatment only twice in 2009, once in 2010, five times in 2011, never in 2012, and four times in 2013. At most of those appointments, moreover, the provider noted that Plaintiff's condition was "stable," that her condition had improved, or that she was doing well. See, e.g. AR 377-78, 414, 461-62, 477, 480. Plaintiff was prescribed Prozac and BuSpar, which were noted to work well, as well as Ativan, which she was to take "sparingly" for panic attacks. AR 414, 442, 449, 461-62, 477, 480. And as the ALJ noted, AR 20, Plaintiff was never referred to a psychiatrist or for psychotherapy and was never hospitalized for her psychiatric complaints. The ALJ therefore did not err in relying on these factors to discount Plaintiff's credibility. See Young v. Comm'r of Soc. Sec., 594 F. App'x 914, 917 (9th Cir. 2014) (finding that in discounting subjective complaints, ALJ "properly took into account that [plaintiff] received only conservative treatment" for mental problems); Kellerman v. Astrue, No. 11-4727, 2012 WL 3070781, at *8 (N.D. Cal. July 27, 2012) (finding that ALJ permissibly discounted plaintiff's credibility when "[m]edical evidence [showed] that [plaintiff's] depression was 'controlled' using antidepressants").

    The ALJ also permissibly discounted Plaintiff's credibility based on the "minimal clinical and diagnostic findings with respect to [her] mental impairment." AR 19. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

analysis."); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). As the ALJ noted, AR 20, Plaintiff claimed to suffer from frequent panic attacks, see AR 86-87, 348, 358, but her medical records showed that she seldom reported this to her treating doctors, see, e.g. AR 449, 463, 481 (treatment records mentioning panic attacks). Nor did Plaintiff report her panic attacks to Dr. Dixit, the examining psychologist. See AR 401-05 (Dr. Dixit's report not mentioning panic attacks). And when Plaintiff reported some increased psychological symptoms in April 2011, her doctor effectively managed them by prescribing an additional medication. See AR 463 (Apr. 2011, noting Plaintiff's complaints of increased panic attacks and prescribing additional medication, BuSpar), 462 (May 2011, noting that BuSpar helped Plaintiff sleep), 461 (Aug. 2011, noting that Plaintiff was "doing better" with anxiety and was stable on Prozac and BuSpar). Plaintiff also complained of increased symptoms in August 2013, when she sought a medical excuse from jury duty, AR 479, 481, but by October 2013, Plaintiff said she was "doing well," had "no complaints," and had "no depressed mood," AR 477. And other than a mild to moderate difficulty performing mathematical skills, Dr. Dixit concluded that Plaintiff's psychological condition resulted in only mild limitations. AR 401-05. Such minimal findings fail to support Plaintiff's claims of totally disabling anxiety and depression that worsened over time.

  The ALJ also permissibly discounted Plaintiff's credibility because her activities were inconsistent with her alleged limitations. AR 19-20; see Molina

13

v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that ALJ may discredit claimant's testimony when "claimant engages in daily activities inconsistent with the alleged symptoms" (citing Lingenfelter, 504 F.3d at 1040)); id. at 1113 ("Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ properly discounted claimant's testimony because "she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments"). For example, in August 2010, Plaintiff claimed that she was totally disabled by her depression and anxiety, which affected her ability to remember, understand, complete tasks, concentrate, follow directions, finish what she started, and get along with other people, AR 327, but in December 2010, she reported to Drs. Dixit and Chen that she was able to take a bus by herself, drive a car, shop for groceries, complete household chores, run errands, read, walk, and go to the movies, AR 402, 406, and in December 2011, she testified that she used a computer, drove, and ate at restaurants once a week, AR 44-48.[7]

Plaintiff also claimed that her anxiety was worse when she was "out in public," AR 55, but she still took a 9-day cruise to Mexico and a 3-day trip to Las Vegas, AR 49-53. Plaintiff alleges that the ALJ "conveniently omitted

---

[7] After her initial claim for benefits was denied, Plaintiff claimed that her condition had worsened and that her daily activities were much more limited; for example, she claimed that she need help getting in and out of the shower, washing her hair, and sometimes, getting to and from the bathroom. AR 352. But as previously discussed, Plaintiff's medical records do not show any sustained worsening of her condition. Moreover, given that Plaintiff suffered only from psychiatric conditions, it is not clear why she would be so physically limited as to be unable to even walk to the bathroom or wash her hair.

14

[Plaintiff's] testimony regarding the difficulty she had on those two trips." JS at 5. However, the ALJ acknowledged that a "vacation and a disability are not necessarily mutually exclusive" but that Plaintiff's ability to take those trips contradicted her alleged difficulties around strangers and following instructions. AR 19. Moreover, this was just one example of a contradiction between Plaintiff's activities and her allegations of totally disabling anxiety and depression. The ALJ therefore did not err in relying on this factor. See Wilson v. Comm'r, Soc. Sec. Admin., No. 14-01326, 2015 WL 5919881, at *4 (D. Or. Oct. 8, 2015) (holding that ALJ properly found claimant "less than credible" when her "allegations of crippling anxiety were contradicted by her involvement at church, multiple casino trips, and her ability to shop with friends and manage her finances").[8]

The ALJ also noted that Plaintiff worked "on a very limited basis" even before her alleged onset date of February 1, 1993. AR 20. Indeed, Plaintiff reported that her last job was working for one month as a cashier in 1991, and that the longest job she held lasted six months. AR 401; see also AR 283 (showing earnings of $122.55 in 1991, $0 in 1990, $432 in 1989, $332.57 in 1988, $0 in 1987, and $240.28 in 1986). In discounting Plaintiff's credibility, the ALJ was entitled to rely on Plaintiff's poor work history even before she allegedly became disabled. See Thomas, 278 F.3d at 959 (finding that ALJ permissibly discounted claimant's credibility when claimant "had an

---

[8] Plaintiff acknowledges that she is capable of performing "some of what might be considered normal activities of daily living with the assistance of her husband," but she argues that she was unable to perform these activities "over an 8 hour period, 5 days per week as would be required by any full time competitive employment." JS at 4. But "[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113. That is the case here.

'extremely poor work history' and 'has shown little propensity to work in her lifetime'"); Aarestad v. Comm'r of Soc. Sec. Admin., 450 F. App'x 603, 604 (9th Cir. 2011) (finding that ALJ permissibly discounted plaintiff's testimony when "[t]he evidence showed that [plaintiff] worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)").

One of the ALJ's cited reasons for discounting Plaintiff's credibility might not be clear and convincing: that Plaintiff "only applied for [SSI] in this instance because her husband retired from his job." AR 20. But as Plaintiff argues, JS at 8, it appears that Plaintiff may have been ineligible for SSI while her husband was working if his income exceeded the SSI earnings limitation. see AR 71-73, 86, 294, 304. As a result, Plaintiff's applying for benefits after her husband retired does not necessarily show that she was simply disinclined to work. But even if the ALJ erred in relying on this factor, it was harmless because his other reasons fully support his credibility determination. See Carmickle, 533 F.3d at 1162 ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (alterations in original, citations omitted)).

Finally, Plaintiff argues that the ALJ should not have discounted her subjective complaints because they were supported by her daughter's third-party function statement. JS at 8. But the ALJ explained that the daughter's statement, which reported the "same general activities and limitations" that Plaintiff reported, was only partially credible because it was not supported by the evidence as a whole, among other reasons. AR 19. That was a germane reason for rejecting Plaintiff's daughter's statement. See Molina, 674 F.3d at 1111 (holding that ALJ may discount testimony from nonmedical source by

16

giving "reasons germane to each witness for doing so" (citation omitted));
Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that inconsistency with medical record is germane reason for discrediting testimony of lay witness). As such, the ALJ did not err in discounting the third-party statement and he was not required to credit Plaintiff's subjective complaints based on it.

Remand is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: June 2, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge